## SAMUEL HUNT *versus* ARAD HUNT.

Where the payee of a note wrote upon the back of it as follows—"If I am not living at the time this note is paid, I order the contents to be paid to A. H.," and having signed it, afterwards died before the note was paid, it was held, that the endorsement was testamentary, and entitled to probate as a will.

THIS was an appeal from a decree of the judge of probate, in this county, allowing a certain instrument as the last will and testament of Arad Hunt, deceased. The said instrument was as follows :—

" $1,000.　　　　　　　　　*Brattleboro', April* 28, 1813.

For value received, I promise to pay Arad Hunt, or his order, one thousand dollars, within one year from this date, and interest.　　　　　　　　LUTHER WELD.

　　Attest, JONATHAN HUNT."

There were upon the note the following endorsements.

"March 21, 1814, received one year's interest. September 14, 1814, received forty dollars. November 1, 1814, received two hundered and four dollars. May 22, 1818, received thirteen dollars and six cents."

"If I am not living at the time this note is paid, I order the contents to be paid to Arad Hunt. 2d.

　　Witness,　　　　　Arad Hunt."

The testator died in February, 1825.

The appellant filed in the court below, the following, as the reasons for claiming the appeal.

1st, That the said instrument, as presented, has not any of the formalities of a last will, as prescribed by the statute of July 2, 1822.   There is no seal affixed to the signature of the said Arad Hunt, the supposed testator.

2d, That said instrument does not appear to have been executed in the presence of any witnesses.

3d, That it does not, on the face of it, purport to be a testamentary disposition of the note, but a mere gift, which could only be perfected by a delivery of the instrument.

4th, That the instrument was found among the papers of the deceased, and that no person was thereby appointed or requested to execute it, which must show that the deceased did not intend to declare that as his last will.

5th, That the said Arad never intended the same as a will.

6th, That the same, if ever intended as a will, was revoked by the said Arad before his decease.

7th, That the said note was made in the state of Vermont, and the maker has always resided in that state, having no property in this state.

8th, That administration of all the estate of said Arad, deceased, within the jurisdiction of said judge of probate, for the county of Cheshire has, long since, been granted by said judge, and is still in force.

*H. Hubbard*, for the appellant.

*Handerson*, for the appellee.

Wills, or devises of real estate, were unknown to the common law.   The first statute passed in England upon this subject, was that of the 32 H. 8, which authorised a devise of real estate by will in writing.   But no precise form or ceremony was necessary, nor were witnesses required.   But by the statute of 29 Car. 2, it was provided, that wills of real estate should be signed by the testator, and be attested by three witnesses, in the presence of the devisor.   5 Bacon's Ab. 503.

It will be found, that our statute of wills agrees in substance with the said statute of 29 Car. 2.

The statutes of this state, relate entirely to wills of real estate, and to the disposition of personal property to a limited amount, by verbal or nuncupative wills. With that exception, wills of personal property remain as at common law, without any regulation by statute.

What, then, is the common law upon this subject?

The power of bequeathing personal property is coeval with the first rudiments of the law. 2 Bl. Com. 495.

But this power of bequeathing did not extend originally to the whole of a man's personal estate. But by imperceptible degrees, the right of disposing of goods and chattels became enlarged, and as early as the reign of Charles the First, the whole personal property became subject to testamentary disposition. Powell on Devises, 6.

In early times, when the art of writing was not generally in practice, verbal wills were of frequent occurrence; and to remedy the evils attending that mode of disposing of property, the English statute, regulating the amount and defining the circumstances under which nuncupative wills might be valid, was passed. And our statute makes similar provisions.

In disposing of personal property by written devise, we find the following established rules.

If the will be reduced to writing, no particular form or ceremony is necessary; nor are witnesses required to attest the execution or publication. 2 Bl. Com. 501—505; Rob. on Frauds, 448.

If written by another person, under the direction of the testator, although not signed by the testator, still it is good to pass personal property. All that is necessary is, that it appear to have been the design of the testator to dispose of the property after his death. Rob. on Frauds, 454.

It is not necessary that there be an executor named in the will, and where none is named, administration is

granted *cum testamento annexo.* Such an administration is well known in the law, and of frequent occurrence. 2 Bl. Com. 503.

In conformity with the foregoing well settled principles of elementary writers, many reported cases are to be found in the books. 3 Vesey, Jr. 157, *Coxe* v. *Basset* ; 4 Vesey, 200, *Hobberfield* v. *Browning* ; 1 Johns. Ch. Rep. 155, *Morrell* v. *Dickey* ; Moore, 177, *West's Case* ; 4 Vesey, Jr. 555, *Chaworth* v. *Beech.*

In the case now before the court, the writing upon the note in question, seems to possess every requisite to constitute a good specific devise of personal property. It was written by the promissee of the note, and signed by him sometime before his death ; and the note, with the writing upon it, was kept safely with his other notes until his decease, when it passed into the hands of Jonathan Hunt, Esq. the administrator. The writing was not an idle memorandum, and left among papers of no value. It was made for some purpose, and if not with an intent to pass the interest in the note, for what purpose was it made ? It evidently was not intended, nor could it operate to pass a present interest in the note. Had it been so intended, it would have been delivered to Arad Hunt, the second. Without such delivery, Arad second, could not claim as endorsee. If the writing has any effect, it is testamentary, and we apprehend is clearly valid as a devise. The note remained under the control of the promissee during his life, and, as in all other cases of wills, was subject to revocation. The writing speaks a language not to be misunderstood. It shows " an actual design of disposing, after death, of the property in question," and whatever be the form of the writing, this is all that the law requires.

*By the court.* It is not disputed, in this case, that the deceased signed the writing which is offered for probate. There is no evidence, that he ever abandoned the original intention with which he made the writing. But it

Hunt
v.
Hunt.

is objected, that the writing is not in its nature testamentary. We think, however, that the authorities adduced by the appellee's counsel are decisive, to show that the writing is testamentary, and as such, entitled to probate. Lovelass on Wills, 160 ; Wentworth's Office of Ex'rs, 261 ; Godolphin, 67 ; 3 Vesey & Beame 54, *Akerman* v. *Burrows*.

*Decree of the court below affirmed.*